In the United States District Court
For the Northern District of Illinois
Eastern Division

| | |
|---|---|
| Martin Whittaker,<br>   Plaintiff,<br><br>        --vs--<br><br>IC System, Inc., and Equifax, Inc.,<br>   Defendants. | No.<br><br>Judge:<br><br>Magistrate Judge: |

## Complaint

1.     The plaintiff, Martin Whittaker, here complains of the defendants, IC System, Inc. ("ICS"), and Equifax Inc., Inc., for their violations of the Fair Credit Reporting Act in connection with a debt hat Mr. Whittaker does not owe – an electricity bill for an apartment that Mr. Whittaker vacated months before the electricity charges were incurred.

2.     Although Mr. Whittaker has communicated to both defendants repeatedly, and supplied them with ample independent proof, that he never owed the debt, the defendants have persisted in reporting that he does. (And, once presented with the same evidence, TransUnion and Experian – the principal credit reporting agencies that compete with defendant Equifax- immediately deleted this purported debt from Mr. Whittaker's credit history.)

### Parties, Jurisdiction and Venue

3.     Defendant ICS is a corporation whose principal business is collecting debts for consumer creditors. ICS routinely furnishes information relating to consumers to consumer reporting agencies, and thus has duties under the Fair Credit Reporting Act, **15 USC §1681s-2.**

4.     Defendant Equifax is one of the three principal consumer credit reporting agencies in the United States (Experian and Trans Union being the other two). It is a "consumer reporting agency "as that term is defined in the Fair Credit Reporting Act, **15 USC § 1681a(f).**

5.     Plaintiff Martin Whittaker is, and was at all times relevant to this Complaint, a resident of this federal judicial district.

6.     The liabilities of defendants that Mr. Whittaker alleges arise under federal statute, the Fair Credit Reporting Act, and so this court has jurisdiction over the case under the express jurisdiction-granting provisions of that statute (**15 USC §1681p**), as well as §1331 of the United States Judicial Code (**28 USC §1331)**. There may be claims, too, against the original creditor, Commonwealth Edison, if discovery reveals that it, too, reported this alleged debt to the credit reporting agencies (an employee of Commonwealth Edison denied this over the phone to Mr. Whittaker on July 19, 2011). Commonwealth Edison's part in the matter is thus described in the

"Essential Facts" section next below.

7. All of the activities creating the liabilities of defendants that Mr. Whittaker alleges were centered in this federal judicial district, and a large majority of those acts and omissions occurred in this judicial district. Venue is thus proper in this court under §1391 of the United States Judicial Code, **28 USC §1391(b)**.

## Essential Facts Concerning Liability

8. From approximately May, 2007, to mid-December, 2008 Mr. Whittaker lived at an apartment at 1923 South Euclid Street in Berwyn, Illinois.

9. Shortly after he vacated the Berwyn apartment, in January, 2009, Mr. Whittaker notified Commonwealth Edison via its internet web page that he had vacated that apartment and moved to an Oak Park, Illinois address.

10. Commonwealth Edison ignored that communication. It continued to send bills addressed to Mr. Whittaker at the Berwyn address, which were for a time forwarded to him at the Oak Park address, for power supplied to the Berwyn apartment for several months in 2009, months after Mr. Whittaker had vacated the Berwyn apartment and so notified Commonwealth Edison. Those bills ceased to be forwarded to Mr. Whittaker after about five or six months into calendar year 2009.

11. A copy of the last of those bills addressed to the Berwyn address, for just over $55, is attached as Exhibit A. (The handwritten annotations are those of some employee of defendant ICS, from whose files the exemplar of that exhibit comes).

12. That bill shows a mailing date in late September, 2009 – nine months after he had left that address, eight months after he had informed Commonwealth Edison he had left, and after, even, the mail had ceased to be forwarded to his new Oak Park address. It reflects charges for service in March, 2009, again after Mr. Whittaker had informed Commonwealth Edison that he had left the Berwyn address.

13. Commonwealth Edison ignored at least two other written, mailed notices Mr. Whitaker sent to its "customer service" department in December 2009 and January 2010 (copies of which are attached here as Exhibits B and C).

14. Commonwealth Edison has never sent a bill or any other communication to the Oak Park address communicated to it in his January internet communication, his December 2009 letter and January 2010 letter.

15. Last week -- at the start of what is characterized as one of the most severe Chicago-area heat waves since the deadly summer of 1995, and during a period when Mr. Whittaker's young children were to be living in his Oak Park home – Commonwealth Edison turned off the electricity to Mr. Whittaker's Oak Park home. On the phone, during a call Mr. Whittaker placed to it, Commonwealth Edison said that it would not restore power unless he paid it $56 for power supplied to the Berwyn apartment in 2009, *i.e.* paid the post-Berwyn-exit bill that Mr. Whittaker

had already informed it he disputed.

16. Commonwealth Edison sold defendant ICS the alleged debt, or contracted with defendant ICS to collect it, some time in or after September, 2009.

17. Defendant ICS has been dunning Mr. Whittaker for payment of the 2009 Commonwealth Edison post-Berwyn-exit bill since at least late 2009.

18. The first attempts that Mr. Whittaker became aware of were phone calls to his office phone during normal working hours. During one or more of those phone calls Mr. Whittaker informed ICS that he disputed any debt to Commonwealth Edison, demanded verification of the debt, and demanded cessation of collection efforts until defendant ICS supplied a verification of the debt.

19. Defendant ICS did not, however, cease collection efforts. It sent dunning letters and notices to Mr. Whittaker throughout 2010. It did not supply verification of the debt ever.

20. In fact, in a series of correspondence in 2010, Mr. Whittaker informed defendant ICS that he disputed the debt it was trying to collect, explained the reasons why, supplied it with copies of his letters to Commonwealth Edison that are copied here as Exhibits B and C, and also supplied a sworn declaration from his former landlord at the Berwyn address verifying that Mr. Whittaker had vacated the Berwyn apartment before the charges reflected in the post-Berwyn-exit bill were incurred. A copy of Mr. Whittaker's final letter to defendant ICS – invoking its FCRA duties to correct its incorrect adverse reports – is attached as Exhibit D, including the Berwyn landlord's sworn declaration that accompanied it.

21. Defendant ICS responded to that letter with the letter attached here as Exhibit E. Defendant ICS says there that defendant ICS will continue to report the post-Berwyn-exit bill as an unpaid debt to the credit reporting agencies as part of "all [its] debts that are unresolved and unpaid."

22. Simultaneously with his series of correspondence supplying this information to defendant ICS, Mr. Whittaker supplied all of that information also to the major credit reporting agencies, too. On the strength of that evidence, TransUnion and Experian have deleted the post-Berwyn-exit bill information from Mr. Whittaker's credit history. See, *e.g.,* TransUnion's notice to Mr. Whittaker regarding deletion, attached as Exhibit F.

23. Defendant Equifax, however, has refused to correct Mr. Whittaker's credit report in spite of all of the evidence Mr. Whittaker has supplied it. A copy of a portion of its current credit report for Mr. Whittaker still incorrectly showing the post-Berwyn-exit bill as a valid, unpaid debt is attached as Exhibit G.

### Count I – §1681s-2 FCRA Violations – ICS

24. By reporting incorrect information to the major credit reporting agencies and failing to correct and update that incorrect information after Mr. Whittaker supplied ample evidence to show it was incorrect, defendant ICS has violated 15 U.S.C. §1681s-2.

25. The facts that (1) Experian and TransUnion did correct the incorrect information that defendant ICS supplied them after they received that same evidence but (2) defendant ICS persisted in claiming the right to report the information as part of "all [its] debts that are unresolved and unpaid" shows that ICS's violations were willful and make it liable under both 15 U.S.C. §§1681n and 1681o.

### Count II – §1681i FCRA Violations – Equifax

26. By reporting incorrect information on Mr. Whittaker's credit history and failing to correct and update that incorrect information after Mr. Whittaker supplied ample evidence to show it was incorrect, defendant Equifax has violated 15 U.S.C. §1681i.

27. The facts that (1) Experian and TransUnion did correct the incorrect information that defendant ICS supplied them after they received that same evidence but (2) defendant Equifax persisted in reporting the incorrect information shows that Equifax's violations were willful and make it liable under both 15 U.S.C. §§1681n and 1681o.

### Jury Demand

The plaintiff, Martin Whittaker, hereby demands trial by jury on issues so triable.

*Wherefore,* Martin Whittaker prays for judgment against defendants and an award of actual damages, punitive damages in sufficient amount to deter future violations, and his costs and fees for prosecution of this action.

/s/ Martin Whittaker, *pro se*
Illinois Atty. Registration No. 6208211
1018 North Austin, #3
Oak Park IL 60302
312-498-6898
Privatrecht@Gmail.com